**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **Criminal No. 04cr355-06 (CKK)** |
| AARON PERKINS, | **(Civil Action No. 12-1793)** |
| Defendant. | |

**MEMORANDUM OPINION**
(March 19, 2015)

On July 15, 2005, Aaron Perkins ("Perkins") was convicted by a jury in this Court of: conspiracy to conduct and participate, directly and indirectly, in the affairs of an enterprise, through a pattern of racketeering activity ("Count I"), including the armed robbery of the SunTrust Bank located at 5000 Connecticut Avenue, N.W., Washington, D.C., on or about June 29, 2004 ("Racketeering Act 4"); conspiracy to commit offenses against the United States, that is, armed robberies of banks the deposits of which were then insured by the Federal Deposit Insurance Corporation ("Count II"); armed robbery of the SunTrust Bank on or about June 29, 2004 ("Count XV"); and using and carrying a firearm during and in relation to a crime of violence on or about June 29, 2004 ("Count XVI"). Presently before the Court is Perkins' *pro se* [788] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Upon a searching review of the parties' submissions,[1] the relevant authorities, and the record as a whole, the Court finds no grounds for setting aside Perkins' conviction and sentence at this time. Accordingly, the Court

---

[1] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents: Def.'s Mot. to Vacate Sentence ("Def.'s Mot."), ECF No. [788]; Def.'s Memo. in Support of Mot. to Vacate Sentence ("Def.'s Memo."), ECF No. [788-1]; Govt.'s Opp'n to Def.'s Mot. to Vacate Sentence ("Govt.'s Opp'n"), ECF No. [798]; Def.'s Reply Brief ("Def.'s Reply"), ECF No [807]; and transcripts of status hearings and trial.

shall DENY Perkins' [788] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

## I. BACKGROUND

On August 3, 2004, a federal grand jury indicted Perkins and six other codefendants in connection with a string of bank robberies that occurred in the District of Columbia and Maryland.[2] Indictment (Aug. 3, 2004).  The United States Court of Appeals for District of Columbia Circuit ("D.C. Circuit") described the factual scenario:

> [Perkins and his codefendants] indulged in a violent crime spree throughout the District of Columbia metro area that lasted for nearly a year and a half. Appellants, who began by cultivating and selling marijuana, evolved into a ring that committed armed bank robberies, using stolen vehicles to travel to the targeted banks and make their escapes. By the summer of 2004, the robbers had developed a signature style. The gang wore bullet-proof vests, masks, and gloves, and relied on superior fire power, preferring to use military weapons like AK-47s instead of handguns because they surmised the metropolitan police "wouldn't respond" when Appellants "robb[ed] banks with assault weapons." The gang made use of several stolen vehicles, strategically placed along the get-away-route, for each robbery. The robbers would serially abandon the vehicles, often torching them in an attempt to destroy any forensic evidence that might be left behind.

*United States v. Burwell*, 642 F.3d 1062, 1064-65 (D.C. Cir. 2011) (internal citation omitted).  The matter proceeded to trial in this Court, and Perkins was tried alongside five other codefendants. On July 15, 2005, a jury convicted Perkins on all four counts upon which he was charged in the indictment.  Verdict Form, ECF No. [476].

On May 2, 2006, this Court sentenced Perkins to 57 months of imprisonment under Counts I, II, and XV to run concurrently to each other.  The Court also sentenced Perkins to 30 years of

---

[2] An eighth codefendant later was added by virtue of a superseding indictment. Superseding Indictment (Aug. 5, 2004).

imprisonment on Count XVI to run consecutively to Counts I, II, and XV.  *See* Judgment in a Criminal Case at 2, ECF No. [623].  Perkins filed a timely appeal of his conviction and on April 29, 2011, the D.C. Circuit affirmed Perkins' conviction in a published opinion.  *United States v. Burwell*, 642 F.3d 1062 (D.C. Cir. 2011), *aff'd in part en banc*, 690 F.3d 500 (D.C. Cir. 2012).  Perkins filed a petition for writ of certiorari which was denied by the Supreme Court of the United States.  *United States v. Perkins*, -- U.S. --, 132 S. Ct. 537 (2011).  Perkins currently is serving his sentence.

Pending before the Court is Perkins' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  Perkins' motion is premised on ineffective assistance of counsel claims related to his trial counsel, Bravitt Cola Manley, Jr., and his appellate counsel, William Francis Xavier Becker.[3]  Specifically, Perkins claims that his trial counsel rendered him ineffective assistance by: (1) failing to request an informant jury instruction at trial; (2) failing to raise a Confrontation Clause challenge to certain evidence at trial; (3) failing to properly advise Perkins during plea negotiations prior to trial; (4) failing to raise a multiplicity challenge to Counts I and II prior to trial.  Further, Perkins asserts that his appellate counsel rendered him ineffective assistance by failing to raise the issue of juror misconduct and juror bias on appeal.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move

---

[3] The Court notes that on August 8, 2005, after trial had concluded but before Perkins was sentenced, Cynthia Katkish was substituted as counsel for Perkins.  *See* Min. Entry (Aug. 8, 2005).  Perkins does not appear to raise any ineffective assistance of counsel claims related to Ms. Katkish's representation of him through sentencing in this matter.  As noted above, Becker represented Perkins on appeal.

the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001) (citation omitted).

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional

norms," and (2) "that this error caused [him] prejudice."  *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted).  "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence."  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . . [I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of . . . counsel's other litigation decisions."  *Strickland*, 466 U.S. at 691.  In evaluating ineffective assistance of counsel claims, the Court must give consideration to "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.  Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

### III. DISCUSSION

A district court may deny a Section 2255 motion without a hearing when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "'The decision whether to hold a hearing is committed to the district court's discretion, particularly when, as here, the judge who is considering the § 2255 motion also presided over the proceeding in which the petitioner claims to have been prejudiced.'"  *United States v. Orleans-*

*Lindsey*, 572 F. Supp. 2d 144, 166 (D.D.C. 2008), *appeal dismissed*, No. 08-3089, 2009 U.S. App. LEXIS 20833 (D.C. Cir. Sept. 18, 2009) (quoting *Fears v. United States*, No. Civ. A. 06-0086 (JDB), 2006 WL 763080, at *2 (D.D.C. Mar. 24, 2006) (citations omitted)); *see also United States v. Agramonte*, 366 F. Supp. 2d 83, 85 (D.D.C. 2005), *aff'd*, 304 Fed. App'x 877 (D.C. Cir. 2008). "The judge's own recollection of the events at issue may enable him summarily to deny a Section 2255 motion."  *Agramonte*, 366 F. Supp. 2d at 85 (citing *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992)).  To warrant a hearing, the petitioner's Section 2255 motion must "raise[] 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection.'" *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Based on a thorough review of the parties' pleadings and the entire record in the criminal proceeding, the Court finds that there is no need for an evidentiary hearing on the instant motion. As explained below, Perkins has not proffered detailed and factual allegations outside of the record such that a hearing is required on the issues raised in his motion.  Accordingly, the Court shall render its findings based on the parties' pleadings and the record.

Specifically, Perkins raises five ineffective assistance claims related to his counsel allegedly: (1) failing to request an informant jury instruction at trial; (2) failing to raise Confrontation Clause challenges to certain evidence at trial; (3) failing to properly advise Perkins during plea negotiations prior to trial; (4) failing to raise a multiplicity challenge to Counts I and II prior to trial; and (5) failing to raise the issue of juror misconduct and bias on appeal.  The Court shall address each claim in turn.

### A.  *Informant Jury Instruction*

Perkins first argues that his trial counsel rendered him ineffective assistance by failing to request an "informant jury instruction" with respect to the testimony of Noureddine Chtaini and Antwon Perry, two codefendants turned government witnesses.  Specifically, Perkins asserts that at the time that Chtaini and Perry testified they had either entered into plea agreements or had pending criminal charges and, thus, sought to gain a benefit from the government for testifying. Def.'s Memo. at 2.  Perkins further argues that "[r]equesting the informant instruction was vital because a general witness credibility instruction was not sufficiently cautionary for informants because of unique issues regarding the incentive that informants have to fabricate information for their own benefits."  *Id.* at 2-3.

Perkins' claim fails because the record reflects that the Court did, in fact, give instructions regarding witnesses with plea agreements and witnesses who are accomplices.  The instructions as read during trial follow:

> Now, you've heard evidence that Noureddine Chtaini, Omar Holmes and Antwon Perry each entered into separate plea agreements with the government, pursuant to which each of these witnesses agreed to testify truthfully in this case, and the government agreed to dismiss charges against him and/or decline prosecution of charges against him, and bring the witness's cooperation to the attention of the sentencing court on the remaining charges.
>
> The government is permitted to enter into this kind of plea agreement. You in turn may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond reasonable doubt.
>
> A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness, because the plea agreement does not protect him against prosecution for perjury or false statement, should he lie under oath.
>
> However, you may consider whether a witness who has entered into such an agreement has an interest different from any other witness. A witness who realizes that he may be able to obtain his own freedom or receive a lighter sentence by

giving testimony may have a motive to lie.

The testimony of a witness who has entered into a plea agreement should be received with caution and scrutinized with care. You should give the testimony such weight as in your judgment it's fairly entitled to receive.

Now, you've also heard that Omar Holmes and Noureddine Chtaini were accomplices. Accomplices in the commission of a crime are competent witnesses, and the government has a right to use them as witnesses. An accomplice is anyone who knowingly and voluntarily cooperates with, aids, assists, advises or encourages another person in the commission of a crime, regardless of his degree of participation.

The testimony of an alleged accomplice should be received with caution and scrutinized with care. You should give it such weight as in your judgment it's fairly entitled to receive. If the testimony of an alleged accomplice is not supported by other evidence, you may convict the defendant upon that testimony only if you believe that it proves the guilt of the defendant beyond a reasonable doubt.

Tr. 7996:1–7997:16 (Jun. 21, 2005).

Accordingly, Perkins' ineffective assistance of counsel claims fail on this issue because the Court did give the relevant instruction.

## B. *Confrontation Clause Challenge*

Next, Perkins argues that his trial counsel rendered ineffective assistance by failing to raise Confrontation Clause challenges to records and affidavits admitted into evidence at trial related to the Federal Deposit Insurance Corporation ("FDIC") insured status of the banks that were robbed, one of the elements of Count II, and to DNA Expert Heather Suebert's testimony "giv[ing] credence to out-of-court statements of non-testifying analysts." Def.'s Memo. at 3-5. The Court finds that these claims are without merit for the several reasons described below.

Turning to Perkins' first argument, Perkins objects to the admission of documents establishing the insured status of four banks – Bank of America, Riggs Bank, Chevy Chase Bank,

and SunTrust – along with affidavits attesting to the fact that the documents were official records of the FDIC; the records and accompanying affidavits were admitted into evidence at trial without objection.  *See* Ex. CCB-001 (Proof of Insured Status for Chevy Chase Bank), ECF No. [837-1]; RB-001 (Proof of Insured Status for Riggs Bank), ECF No. [837-2]; BOA-001 (Proof of Insured Status for Bank of America), ECF No. [837-3]; SUN-001 (Proof of Insured Status for SunTrust Bank), ECF No. [837-4].  Perkins' claim fails because the official records and accompanying affidavits were not testimonial and, thus, do not invoke Confrontation Clause concerns. As the Government properly points out, the records themselves were admitted into evidence under the public records exception to the hearsay rule.  *See* Fed. R. Evid. 803(8) (Hearsay Exception for Public Records).  Further, the affidavits were admitted pursuant to Federal Rule of Evidence 902(4), to establish that the evidence was self-authenticating as certified copies of public records.

Perkins relies on the Supreme Court's holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), in support of his Confrontation Clause argument.  In *Melendez-Diaz*, the Supreme Court held that affidavits showing the results of forensic analyses performed on seized substances are testimonial statements and, accordingly, analysts are witnesses under the Confrontation Clause of the Sixth Amendment.  *Id.* at 309-11.  The Court clarified that affidavits "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" *id.* at 311 (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)), are testimonial statements and, accordingly, the authors of such affidavits are witnesses for the purposes of the Confrontation Clause of the Sixth Amendment.  *Id.* at 311.  The Court found that "[a]bsent a showing that the [authors of the affidavits] were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled

to 'be confronted with' the [authors of the affidavits] at trial.'"   *Id.*   In drawing a connection between the affidavits at issue in *Melendez-Diaz*, and the affidavits certifying the FDIC records in this instant action, Perkins argues that his trial counsel erred by failing to raise a Confrontation Clause challenge to the admissibility of the affidavits reflecting that the banks were insured by the FDIC because the authors of the affidavits did not testify at trial.   Def.'s Memo. at 4.   The Court finds that this argument fails based on the relevant case law on this issue.

Indeed, the Supreme Court in *Melendez-Diaz*, appeared to distinguish between situations in which an affidavit is used to authenticate an otherwise admissible record from an affidavit created for the sole purpose of providing evidence against a defendant.   *See Melendez-Diaz*, 557 U.S. at 322-23.   This Court itself has held that an affidavit certifying the authenticity of a record is not testimonial and, accordingly, not subject to the Confrontation Clause.   As this Court held, "[i]t is the records, *not* the certification, that are introduced into substantive evidence against the defendant during trial. The certifications at issue are simply 'too far removed from the 'the principal evil at which the *Confrontation Clause* was directed' to be considered testimonial.'" *United States v. Edwards*, Crim. Case No. 11-129-1, 1, 11 (CKK), 2012 WL 5522157, at *2 (D.D.C. Nov. 15, 2012) (quoting *United States v. Ellis*, 460 F.3d 920, 920 (7th Cir. 2006)).   The Court finds the affidavits were not testimonial within the meaning of the Confrontation Clause because the affidavits in question were created only to certify the authenticity of the public records, and not to provide substantive evidence against Perkins at trial.

Second, Perkins claim fails because there was independent testimony at trial that each of the four banks were FDIC-insured and Perkins' counsel was presented with the opportunity to cross-examine these witnesses on the issue.   Tr. 1216:6-21 (Apr. 18, 2005) (Testimony of Viola J.

Scott, banking center manager at Bank of America branch); Tr. 1463:23—1464:10 (Apr. 19, 2005)

(testimony of Ricardo Young, assistant manager at Riggs Bank branch); Tr. 1543:5-19 (Apr. 20,

2005) (Testimony of Jacqueline Caldwell, bank manager at Chevy Chase Bank branch in

Hyattsville, MD);  Tr. 1634:15-23 (April 20, 2005) (Testimony of Curtis Oliver, branch manager

at Chevy Chase Bank branch in Silver Hill, MD);   Tr. 2168:11—2169:2 (Apr. 25, 2005)

(Testimony of Charlene Hollings, branch manager of SunTrust Bank branch).  Finally, Perkins'

claim fails because he has not pointed to any evidence that his counsel failed to present that refuted

the assertion that the banks were in fact FDIC-insured, nor does Perkins himself at this juncture

appear to be claiming that the banks were not FDIC-insured.

Given that the evidence in question does not raise Confrontation Clause concerns and that

defense counsel was presented with the opportunity to cross-examine witnesses who testified that

each bank was FDIC-insured, the Court finds that counsel did not act in an objectively

unreasonable manner by failing to raise this challenge at trial.  Nor does the Court find that Perkins

was prejudiced by counsel's failure to raise this claim because Perkins has not pointed to any

evidence to rebut the claim that the banks were FDIC-insured.

Turning to Perkins' second claim related to DNA Expert Heather Seubert, Perkins appears

to contend that his Sixth Amendment right was violated by the admission of testimonial statements

made by Suebert at trial.  Specifically, Perkins claims that Suebert's testimony "was premised on

statements and reports conducted by a non-testifying analyst who did not testify at trial," and that

"trial counsel should have objected to the documents being admitted into evidence through Heather

[Suebert]'s testimony."  Def.'s Memo. at 5.  Suebert testified at trial on May 26, 2005, and June

1, 2005, and was cross-examined by Perkins' trial counsel.  *See generally* Tr. 5345:19—5381:18

11

(Jun. 1, 2005) (cross examination of Heather Suebert by Perkins' trial counsel).

Suebert's notes and reports do not raise Confrontation Clause issues because they were not admitted into evidence at trial, but rather were provided to the parties prior to trial to allow the parties to raise specific objections to the admissibility of the DNA evidence.[4]  *See Williams v. Illinois*, -- U.S. --, --, 132 S. Ct. 2221, 2228 (2012) ("When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.").  As the Court noted during Suebert's cross examination by Perkins' trial counsel: "Okay. We have not admitted her report [into evidence].  That's why I just want to make sure that, in terms of the record, we hook it up to whatever exhibits we've actually admitted."  Tr. 5370:8-11 (Jun. 1, 2005).  Given that the evidence in question does not raise Confrontation Clause concerns because it was not admitted into evidence at trial, because it was related by Suebert solely for the purpose of explaining the assumptions on which her opinion rested, and because defense counsel was presented with the

---

[4] The parties made several arguments related to the admissibility of the DNA evidence at trial.  *See* Defs.' Jt. Objections to Govt.'s Proposed DNA Evid., ECF No. [248]; Govt.'s Opp'n to Def.'s Jt. Objections to Govt.'s Proposed DNA Evid., ECF No. [257]; Govt.'s Supp. to Opp'n to Def.'s Jt. Objection to Govt.'s Proposed DNA Evid., ECF No. [259]; Palmer's Resp. to Govt.'s DNA Pleadings, ECF No. [279]; Morrow's Reply to Govt.'s Supp. Opp'n to Def.'s Jt. Objections to Govt.'s Proposed DNA Evid., ECF No. [282]; Govt.'s Reply to Def. Palmer's & Morrow's Resp. to Govt.'s Proposed DNA Evid., ECF No. [288]; Perkins' Mot. to Exclude Contaminated DNA Samples Obtained from Brinkley Road Search, ECF No. [363]; Govt.'s Opp'n to Def. Perkins' Mot. to Exclude Allegedly Contaminated DNA Samples Obtained from Brinkley Road Search, ECF No. [377]; Perkins' Mot. to Exclude Contaminated DNA Samples Obtained from Brinkley Road Search, ECF No. [381]; Memo. Op. (Apr. 25, 2005), ECF No. [305].

opportunity to cross-examine Suebert at trial, the Court finds that trial counsel did not act in an objectively unreasonable manner by failing to raise this challenge.

For the reasons described, the Court concludes that Perkins' claims that his counsel rendered him ineffective assistance of counsel by failing to raise Confrontation Clause challenges both to the admission of the documents establishing the insured status of four banks and to the testimony of DNA Expert Heather Seubert are without merit.

## C. *Plea Offer*

Perkins asserts that his trial counsel was deficient in representing him during plea discussions.  Perkins indicates that "trial counsel discussed the fact that the government agreed to permit Petitioner to plead guilty to conspiracy, one count of armed robbery, and possession of a firearm during a crime of violence . . . ."  Def.'s Memo. at 6.  However, Perkins alleges that his trial counsel was ineffective because he failed to secure the government's plea offer in writing. Perkins further asserts that "trial counsel never explained to [him] whether or not he would have to waive his right to trial on the remaining counts against him or whether [he] would have to plead guilty at a later date to the remaining counts in the indictment."  *Id.*  Moreover, Perkins alleges that his trial counsel never informed him whether he would have to pay any restitution as part of a plea.  *Id.*  Ultimately, Perkins argues that he would have accepted the government's plea offer if his counsel had advised him "that other charges in the indictment would have been dismissed in exchange for his guilty plea," and "if his counsel would have secured the government's plea in writing."  *Id.*

A criminal defendant's right to effective assistance of counsel under the Sixth Amendment extends to the plea-bargaining process.  *Lafler v. Cooper*, -- U.S. --, --, 132 S. Ct. 1376, 1384

13

(2012).   The Court employs the two-part *Strickland* test in analyzing an ineffective assistance of counsel claim arising out of the plea negotiations.   *Id.*   First, a defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.   *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008).   Second, a defendant must show that the error caused him prejudice.   *Hurt*, 527 F.3d at 1356.   In order to establish prejudice:

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385.

The record reflects that plea offers were extended to Perkins and his codefendants, and expired in September 2004.   Indeed, during a status hearing held on September 27, 2004, the prosecutor indicated that plea offers had been extended to all the defendants and they expired on that day.   Tr. 10:20-22, 12:13-23 (Sept. 27, 2004).   It was explained at the hearing:

> MS. KITTAY [government counsel]: Well, because the plea offers will expire today --
>
> THE COURT: I take it by "today," do you mean that they have to accept them or do they have to indicate that they are interested and you will have some further discussions about them?
>
> MS. KITTAY: Well, initially, it was the former, but it's become the latter, and there may be some discussion through the course of this week.
>
> I would imagine if we came – at this point, Your Honor, I would probably insist that if there are to be any pleas, that they be entered before this court within the next week or two; probably more realistically next week.

Tr. 13:12-24 (Sept. 27, 2004); *see also id.* at 21:11-19 (the prosecutor noting that the plea offers would be "off the table and will expire" the moment that the prosecutors left the courtroom that day, unless the defendant's counsel had contacted the government to further negotiate).

At the September 27, 2004, hearing, the prosecutor explained that after final decisions on these plea offers were reached, the government intended to file a superseding indictment that would include a charge for conspiracy to conduct and participate, directly and indirectly, in the affairs of an enterprise, through a pattern of racketeering activity ("RICO conspiracy") and charges for two incidents of assault. *Id.* at 11:16-19. Specifically, the prosecutor noted that the government wanted to extend plea offers that did not include the RICO conspiracy charge because once the government proceeded towards filing a superseding indictment, "it [would] in many ways restrict [the government's] discretion with respect to these plea offers." *Id.* at 12:13-20. During that hearing, the Court set a next hearing date in anticipation of the fact that trial dates would be set once the plea offers were resolved. *Id.* at 20:12—21:10.

On January 31, 2005, the Court held a hearing to discuss the pleas offers extended to and rejected by Perkins and his codefendants on the record.[5] Tr. 10:2-4 (Jan. 31, 2005). During that

---

[5] The Court notes that Perkins in his reply brief argues: "To the extent that the Government foundates [sic] its position on the excerpts of the transcripts dated 1/31 . . . , the Court is respectfully requested to keep in mind that the colloquial conducted on that day is a far cry from the prescribed Rule 11, Fed. R. Crim. P. plea hearing." Def.'s Reply at 5. The Court notes that the January 31, 2005, status hearing differed from a Rule 11 hearing because the defendants had rejected the plea offers. As the Court explained:

> [T]he whole purpose of this [hearing] is to make sure on the record that there's been a discussion with each of the clients as to what the plea offer would mean in terms of sentencing guidelines, what the plea offer would mean if they got convicted of all of it, what the differences would be in terms of potential sentences. If you

hearing, the Court discussed the plea offer with Perkins, Perkins' trial counsel, and the prosecutor on the record and Perkins indicated that he did not accept the plea offer.   As the prosecutor explained at the hearing, the government extended Perkins an offer that would have required him to plead guilty to one count of conspiracy to commit armed robberies (18 U.S.C. § 371); one count of armed robbery (18 U.S.C. § 2113); and one count of using and carrying a firearm during and in relation to a crime of violence under the D.C. Code.  *Id.* at 25:12-15.  Further, the plea offer would not have required Perkins to cooperate with the government.  *Id.* at 25:15-16.

The parties then discussed the potential sentencing implications of accepting the plea offer as opposed to proceeding to trial.  After the prosecutor explained that the guideline range of the term of imprisonment under the plea offer would be 78 to 97 months, the Court inquired of Perkins' counsel and of Perkins who was placed under oath:

> THE COURT: Well, it's 78 to 97 months. Was there a different calculation that you did?
>
> MR. MANLEY [Perkins' counsel]: I think it was that we were looking at what the maximum sentence would have been under the guidelines, so that was a range, but

---

> disagree with the way the government has calculated [the potential sentence], you would put that on the record.
>
> This is so that there – if it doesn't occur, that we go to trial, somebody gets convicted and then afterwards it is raised in a 2255 that they did not get a full discussion of the plea.
>
> So this is my best way of making sure that everybody is on the same page, that whatever the government has said everybody hears, whatever defense counsel has said and your client, so that there's no issues at a later point.

Tr. 15:6-21 (Jan. 31, 2005).  The Court further explained its role during the hearing: "[T]he court doesn't get involved with what gets offered and rejected. All I want to do is to make sure that all of these options are discussed, presented to the defendants and that you have the option of making your own decision about it in consultation with your lawyer." *Id.* at 17:8-13.

it was explained to him that it would be 97, a possible sentence of 97 months. **But since Mr. Perkins is innocent of these charges, we rejected the plea offer and Mr. Perkins directed me that we weren't to enter into any further plea negotiations.**

THE COURT: Mr. Perkins, was this the plea offer that you discussed with your attorney?

DEFENDANT PERKINS: Yes, Your Honor.

THE COURT: And is this roughly the calculation that you discussed with him as well.

DEFENDANT PERKINS: Yes, Your Honor.

THE COURT: Then if we could do the one in terms of it turns out that he goes to trial and does get convicted.

*Id.* at 26:18—27:9.   The prosecutor then went on to explain that Perkins' sentencing exposure under the guidelines would be 411 to 423 months if he proceeded to trial and was convicted. *Id.* at 27:10-17.   The Court then inquired:

THE COURT: All right. Is this the discussion, Mr. Manley, that you had with your client?

MR. MANLEY: Yes, it is, Your Honor.

THE COURT: Is that correct, Mr. Perkins?

DEFENDANT PERKINS: Yes, it is, Your Honor.

THE COURT: Were there any departures or anything else the court should be aware of that would have been discussed or potentially available to your client pre-Booker or post-Booker?

MR. MANLEY: No, Your Honor.

**THE COURT: Did you have a long enough period of time to have a discussion with your attorney about this?**

17

**DEFENDANT PERKINS: Yes, Your Honor.**

**THE COURT: Do you understand the offer?**

**DEFENDANT PERKINS: Yes, Your Honor.**

**THE COURT: And what's your decision whether to accept it or not?**

**DEFENDANT PERKINS: Oh, I'm not accepting it.**

*Id.* at 28:2-19.

Turning first to Perkins' argument that his trial counsel was ineffective for failing to get the plea offer in writing, the Court finds this argument is without merit because Perkins has not demonstrated that his counsel's performance was deficient or that he was prejudiced by counsel's failure to obtain a written plea agreement. The Court shall accept as true for the limited purpose of this analysis that Perkins' trial counsel did not secure the plea offer extended to him by the government in writing. Nonetheless, the failure to obtain a plea offer in writing does not demonstrate that his counsel was deficient. Indeed, there is no requirement that a plea offer be reduced to writing in order for it to be honored. *See United States v. Sanchez*, 562 F.3d 275, 280 (3d Cir. 2009) ("Just as contracts are not invalid simply because they are made orally, the same is true of plea agreements."), *overruled on other grounds by Freeman v. United States*, -- U.S. --. 131 S. Ct. 2685 (2011); *see also Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) ("The terms of oral plea agreements are enforceable, as are those of any other contracts, even though oral plea agreements are not encouraged by reviewing courts."). Accordingly, the Court concludes that Perkins' trial counsel's performance did not fall below an objective standard of reasonableness simply because he did not obtain the plea offer extended to Perkins in writing.

18

The Court further finds that Perkins has not demonstrated that he was prejudiced in any way by the failure to request that the plea offer be placed in writing.  Perkins explains that "[t]he prosecution would not have been unwilling [sic] to cancel its offer had Petitioner's trail [sic] attorney made a simple request to have the terms reduced to writing for his client." Def.'s Memo. at 8. While Perkins alleges that "trial counsel never secured any written plea document binding the government to its offer to Petitioner," nowhere in his pleadings does Perkins allege that the government changed the terms of the offer extended to him or rescinded an offer that had been made prior to the expiration of the offer.  *Id.* at 6.  The Court cannot conclude that Perkins was prejudiced by the failure to obtain a written plea offer based only on Perkins' bald assertion that he would have accepted the plea offer if it was in writing without providing any other rationale. *See id.* at 6.  Accordingly, the Court finds that Perkins has failed to demonstrate that he was prejudiced by the failure to obtain a written plea offer when it is clear from the record that Perkins was extended a plea offer, the terms of the offer were explained to him on the record in open court, Perkins confirmed that these terms had been explained to him by his counsel, and he rejected the plea offer.

Turning next to Perkins' argument that his counsel was deficient for failing to explain that the other charges against him in the indictment would have been dismissed if he pled, the Court finds that this argument is without merit for the reasons described herein.  Perkins contends that "trial counsel never explained to Petitioner whether or not he would have to waive his right to trial on the remaining counts against him or whether Petitioner would have to plead guilty at a later date to the remaining counts in the indictment." *Id.*  Further, Perkins asserts that "the outcome of the plea process would have been much different if Petitioner had the advice of competent counsel

because Petitioner would have accepted the pleas [sic] offer had he discovered that other charges in the indictment would have been dismissed in exchange for his guilty plea." [6] *Id.* at 8.  Here, the Court cannot conclude that Perkins' trial counsel was deficient by failing to advise him that the other charges in the indictment would be dismissed if he accepted the plea offer because at the time that the offer was extended and expired, Perkins would have been required to plead guilty to all the counts pending against him *as well as* an additional charge.  Indeed, there were no charges in the indictment that could have been dismissed at that time because no counts would have remained if he accepted the plea offer.

As previously discussed, the plea offer extended to Perkins expired following the status hearing held on September 27, 2004.  At that time, Perkins was charged pursuant to the first superseding indictment filed on August 5, 2004.  Accordingly, when Perkins rejected the plea offer

---

[6] The Court notes that the record reflects that Perkins was familiar with the plea process as he had accepted a plea offer in an unrelated matter less than two months before he was arrested in the instant action.  Indeed, the Presentence Investigation Report in this matter, indicates:

> On January 23, 2004, the defendant was arrested in Prince George's County, Maryland and charged with 1) Concealing a Deadly Weapon; 2) Handgun in a Vehicle; 3) Handgun on person; 4) Handgun Violation Use/Felony-Violent Crime; 5) Unlawfully Taking a Motor Vehicle; 6) Theft of $500 plus; 7) Displaying Registration Plate(s) Issued for Other Vehicle to Other Person . . . ; and 8) Person Driving Motor Vehicle on Suspended License and Privilege . . . .  On June 9, 2004, the defendant appeared in the Circuit Court for Prince George's County, Maryland and **pled to counts two and four**. Sentencing is scheduled for May 24, 2006. The defendant's attorney is Ross Johnson.

Presentence Investigation Report ¶ 83  (emphasis added).  Perkins was arrested in the instant action on August 5, 2004, less than two months after he entered the plea in Prince George's County, Maryland that involved pleading guilty to some pending counts while others were dismissed.  Less than six months after his arrest and eight months after accepting the plea in Maryland, Perkins indicated on the record in open court January 31, 2005, that he rejected the government's plea offer extended to him in the instant action.

20

extended by the government, he was charged only with one count of conspiracy to commit offenses against the United States, that is, armed robberies of banks the deposits of which were then insured by the Federal Deposit Insurance Corporation (18 U.S.C. § 371) and one count of armed bank robbery (18 U.S.C. §§ 2113(a) & (d), 2).  Superseding Indictment (Aug. 5, 2004).  On September 27, 2004, Perkins rejected the government's offer that would have required him to plead guilty to those two counts, the *only* counts that he was charged with at that time, as well as one count of using and carrying a firearm during and in relation to a crime of violence pursuant to the D.C. Code.  Tr. 25:12-15 (Jan. 31, 2005).  As previously mentioned, this offer was made in contemplation of the government filing a superseding indictment to add more charges, including a RICO conspiracy charge and the charge for using and carrying a firearm during a crime of violence, if the plea offers were rejected.  On November 9, 2004, after the plea offers were rejected by Perkins and his codefendants with whom he was tried, the government filed a second superseding indictment, charging Perkins with the same two charges from the earlier indictment as well as two additional counts, the RICO conspiracy charge (18 U.S.C. § 1962(d)) and using and carrying a firearm during a crime of violence (18 U.S.C. § 924(c)).  *See* Superseding Indictment (Nov. 9, 2004).  Perkins was ultimately convicted of all four charges brought against him after trial.  Here, the record demonstrates that Perkins' trial counsel was not deficient for failing to explain the effect of accepting the plea offer on the "remaining counts" in the indictment because if Perkins accepted the plea, there would have been no "remaining counts."  Further, if Perkins had accepted the plea in September 2004, there would have been no additional charges pending against him in this case that could have been dismissed.  Accordingly, the Court finds that Perkins' ineffective assistance of counsel claim as to this issue is without merit because Perkins has failed

to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness.

Finally, the Court notes that while Perkins indicates that his trial counsel failed to discuss with him "whether or not he would have to pay a fine (special assessment) restitutions as part of any guilty plea," Perkins never asserts that he would have accepted the plea offer had this information been provided to him.  Def.'s Memo. at 6.  Accordingly, the Court cannot conclude that Perkins was prejudiced by this alleged failure on his counsel's part.  Further, the Court notes that pursuant to 18 U.S.C. § 3663A(a)(1) and (3), the Court was *required* to enter an order for restitution making Perkins and his codefendants (both those who proceeded to trial and those who pled) jointly and severally liable for $361,000.  Presentence Investigation Report ¶¶ 134-36.  Thus, Perkins would have been required to pay restitution in the same amount whether he accepted the government's plea offer or proceeded to trial and was convicted.

Ultimately, the record reflects and Perkins himself acknowledged under oath that he had sufficient time to discuss with his trial counsel the plea offer that was extended to him by the government.  Further, Perkins indicated his desire to reject the plea offer because he asserted that he was innocent of the charged offenses.  Accordingly, for the reasons described, the Court finds that Perkins' ineffective assistance of counsel claims related to his plea offer are without merit.

### D.  *Multiplicity Challenge to Counts I and II*

Perkins next argues that his trial counsel was ineffective by failing to raise a multiplicity challenge to Counts I and II of the indictment.  Specifically, Perkins asserts that "[t]rial counsel should have made an objection to the indictment on the grounds that Count One should have been dismissed as multiplicitous of Count Two and vice versa." Def.'s Memo. at 9.  Perkins' claim fails

because it is clear from the record that Perkins' counsel did raise this issue prior to trial and the Court rejected it.

"An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Anderson*, 39 F.3d 331, 353-54 (D.C. Cir. 1994), *cert. denied*, 516 U.S. 999 (1995) (quoting *United States v. Harris*, 959 F.2d 246, 250 (D.C. Cir. 1992)).  Here, Perkins alleges that Count I, conspiracy to conduct and participate, directly and indirectly, in the affairs of an enterprise, through a pattern of racketeering activity, and Count II, conspiracy to commit offenses against the United States, that is, armed robberies of banks the deposits of which were then insured by the Federal Deposit Insurance Corporation, are multiplicitous.

Counsel for Perkins' codefendant filed a Joint Defense Motion to Dismiss the Indictment due to Multiplicitous and Duplicitous Charging, which was considered on behalf of all the codefendants, on February 1, 2005. Sealed Jt. Def. Mot. to Dismiss Indictment, ECF No. [172]. In the motion, the Defendants argue that Counts I and II of the indictment are multiplicitous because both counts require proof of essentially the same facts. *See id.* at 2-5.  The Court issued a Memorandum Opinion on March 16, 2005, finding that this argument was without merit. Memo. Op. (Mar. 16, 2005), at 14-16, ECF No. [437].  Specifically, the Court found after applying the multiplicity test from *Blockburger v. United States*, 284 U.S. 299 (1932), and relying on relevant case law, that "Counts I and II do not impinge upon the protections afforded by the Double Jeopardy Clause." *Id.* at 16.  Accordingly, Perkins cannot establish that his trial counsel was ineffective by failing to raise this claim because it is clear from the record that he did timely raise this argument on Perkins' behalf and the Court rejected it.

23

### E.  *Juror Misconduct and Bias*

Finally, Perkins argues that his appellate counsel failed to properly raise the issue of juror misconduct and bias on appeal.  Def.'s Memo. at 10-12.  Allegations of juror misconduct were raised in two post-trial motions by trial counsel.  On August 15, 2005, codefendant Miguel Morrow filed a Motion for a New Trial which the Court considered on behalf of Perkins as well as the other codefendants.  Morrow's Mot. for New Trial, ECF No. [488]; *United States v. Morrow*, 412 F. Supp. 2d 146, 152 n.4 (D.D.C. 2006).  Defendants alleged that: jurors went to both the scenes of the bank robberies and another relevant location, and described the areas during deliberations; jurors read and were influenced by a *Washington Post* article that had been admitted into evidence after it was found at Perkins' apartment; and at least one juror remained in contact with a juror who had been dismissed from the jury after making improper comments about the defendants' guilt during the trial.  Morrow's Mot. for New Trial at 6-7; Def.'s Supp. Memo. in Supp. of Mot. For New Trial at 2-3, ECF No. [509].  After becoming concerned about the "relative unspecific and generalized assertions of juror misconduct by Defendants," the Court set the matter for an evidentiary hearing on the issue of the alleged jury misconduct.  *Morrow*, 412 F. Supp. 2d at 152.  Prior to the hearing, the Court directed that the Defendants provide the government and the Court with any statement made by a juror-witness expected to appear at the evidentiary hearing, and information identifying the individual or individuals to whom the juror made such statements.  *Id.*  Defendants produced post-trial emails between counsel and one juror, Juror #1.  *Id.*

The Court held an evidentiary hearing on the issue of juror misconduct on October 31, 2005, and Juror #1, who was the only juror who provided information relied upon by Defendants, testified under oath.  Min. Entry (Oct. 31, 2005); *Morrow*, 412 F. Supp. 2d at 152.  However, in

keeping within the confines of Federal Rule of Evidence 606(b),[7] which governs inquiries into the validity of a verdict in which a juror is called as a witness, the Court conducted the initial inquiry and then allowed each defendant the opportunity to ask further questions.  *Morrow*, 412 F. Supp. 2d at 152-53.  After hearing the evidence and reviewing additional briefing filed after the hearing, the Court entered a 44-page Memorandum Opinion specifically considering and rejecting each of the claims of juror misconduct as a basis for granting a new trial.  *See generally id.* at 167-74. Further, the Court found that the likelihood of prejudice was too insignificant to warrant a more invasive hearing involving more members of the jury.  *Id.* at 167.  Accordingly, the Court denied the Defendants' requests for further hearings and for a new trial.  *Id.* at 174.

On April 7, 2006, Morrow filed a second motion for a new trial, alleging juror misconduct on the basis that Juror #2, the foreperson of the jury, lied or omitted facts during *voir dire* regarding her relationship with Jerrold E. Vincent, a person unrelated to this case who allegedly had been charged with and convicted of assault.  *See* Morrow's Mot. to Reopen Def. Morrow's Mot. for New Trial, Or, In the Alt., Mot. for New Trial on Newly Discovered Evid., ECF No. [596].  Perkins

---

[7] At the relevant time, Federal Rule of Evidence 606(b) proscribed:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed. R. Evid. 606(b) (2005) (amended 2011).

joined in Morrow's second motion for a new trial.  *United States v. Morrow*, Crim. No. 04-355

(CKK), 2006 WL 1147615, at *1 n.1 (D.D.C. Apr. 26, 2006).  In their motion, the Defendants

alleged that despite being in a romantic relationship with Mr. Vincent, Juror #2 improperly

indicated during *voir dire* that she did not have any immediate family members or close friends

who had "'been arrested, charged with a crime or found guilty or gone to jail for the same or similar

type of crime as the ones charged in this case. So it's any kind of broad robbery, bank robbery,

gun charges, assaults.'"  Morrow's Mot. to Reopen Def. Morrow's Mot. for New Trial, Or, In the

Alt., Mot. for New Trial on Newly Discovered Evid. at 1-2 (quoting Tr. 46:10-14 (Apr. 5, 2005)).

Further, Defendants also alleged that Juror #2 visited Mr. Vincent during the trial in the instant

action at the D.C. Jail, where the Defendants also were housed.  *Id.* at 1.

The Court did not hold a hearing on the issue, and instead based its ruling on a searching

examination of the Defendants' second motion, the Government's opposition, the replies filed by

numerous Defendants, the attached exhibits, the relevant case law, and the entire record.[8]  *Morrow*,

2006 WL 1147615, at *1.  On April 26, 2006, the Court issued a 35-page Memorandum Opinion

detailing its reasons for denying the Defendants' second motion for a new trial.  *See generally id.*

The Court first found that the Defendants' second motion for a new trial was untimely.  *Id.* at *6-

*7.  Next, the Court explained that even assuming *arguendo* that the second motion for a new trial

was properly before the Court, the claims in the motion were without merit.  Specifically, the Court

found that the Defendants had proffered no evidence indicating that Juror #2 actually failed to

disclose information based on her relationship with Mr. Vincent at the time of the *voir dire* and

---

[8] The Court notes that at the time of the filing of the Defendants' second motion for a new trial, Juror #2 was deceased.  *Morrow*, 2006 WL 1147615, at *3.

that there was no evidence that Juror #2 was aware of any assaultive conduct by Mr. Vincent at

the time of *voir dire*. *Id.* at *7-*12. Further, the Court noted that its *voir dire* questioning was

more than adequate to root out relevant information. *Id.* at *13-*16. Finally, the Court noted that

even if Juror #2 did fail to disclose required information during *voir dire*, the Defendants' claim

still failed because the Defendants "cannot demonstrate actual or implied bias on the part of Juror

# 2." *Id.* at *17. Indeed, the Court noted that if Juror #2 had a bias resulting from her relationship

with Mr. Vincent, it is likely that the bias would have been pro-Defendant. *Id.* The Court

explained:

> Ultimately, Defendants have simply made no showing of bias resulting from Mr.
> Vincent's situation that could have transferred to them which would be sufficient
> to support a strike for cause of Juror # 2 had that information been disclosed.
> Indeed, in circumstances much more egregious than this one, where some form of
> bias or prejudice was much more plausible, courts have still remained recalcitrant
> to grant a new trial, finding that the stringent "challenge for cause" test had not
> been met . . . . Accordingly, even assuming *arguendo* that Defendants' Second
> Motion for a New Trial was timely, and that Juror # 2 was aware of and under an
> obligation to reveal Mr. Vincent's criminal history, the information is insufficient
> to lay the foundation for a "challenge for cause" of Juror # 2. As such, even
> assuming the truth of the facts and argument put forward by Defendants in their
> Second Motion for a New Trial, Defendants' motion is without merit.

*Id.* at *19.

Perkins' argument in the instant motion appears to center around the second motion for a

new trial, involving the claims related to Juror #2. *See* Def.'s Memo. at 10-12 (only mentioning

the juror misconduct and bias claims surrounding Juror #2 and not those raised by Juror #1).

Essentially, Perkins argues that his appellate counsel should have raised the issue of the alleged

misconduct and bias of Juror #2 on appeal. Perkins' claim as to his appellate counsel fails for the

reasons described herein.

27

The *Strickland* standard applies to claims of ineffective assistance of both trial and appellate counsel.  *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014).  Accordingly, in order to prevail, Perkins must demonstrate: "(1) his counsel's performance 'fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)).  As the Supreme Court has noted, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  However, the Court noted that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent." *Id.*

In the instant action, Perkins' appellate counsel chose not to raise the issue of the alleged jury misconduct and bias in favor of raising other claims on Perkins' behalf.  For instance, Perkins' appellate counsel raised issues applicable to all codefendants as well as the issue of whether Perkins' case should have been severed from the cases of his codefendants because he was only charged with the last bank robbery.  Jt. Brief of the Appellants at 65-66, *Burwell et al v. United States*, No. 06-3071 (D.C. Cir. Oct. 2, 2009).  Here, the Court cannot conclude that appellate counsel's decision not to raise the issue of the alleged juror bias and misconduct was objectively unreasonable given professional norms, nor can the Court conclude that if appellate counsel had raised this issue, that there is a reasonable probability of a different result on appeal.  First, the D.C. Circuit has recognized for claims of juror misconduct and bias, "[t]he trial court obviously is the tribunal best qualified to weigh the relevant factors and draw the conclusion appropriate."

28

*United States v. Williams*, 822 F.2d 1174, 1189 (D.C. Cir. 1987).  Second, as the Government points out, the D.C. Circuit utilizes a "highly deferential" standard of review for a district court's denial of a motion for a new trial.  Govt.'s Opp'n at 19 (citing *United States v. Rouse*, 168 F.3d 1371, 1376 (D.C. Cir. 1999)); *see also United States v. Gloster*, 185 F.3d 910, 914 (D.C. Cir. 1999) ("We will reverse a district court's decision whether to grant such a motion [for a new trial] 'only if the court abused its discretion or misapplied the law.'").

The Court finds that there is not a reasonable probability of a different result on appeal had the issue of juror bias and misconduct been raised.  As this Court noted, "Indeed, in circumstances much more egregious than this one, where some form of bias or prejudice was much more plausible, courts have still remained recalcitrant to grant a new trial, finding that the stringent 'challenge for cause' test had not been met."  *Morrow*, 2006 WL 1147615, at *19.  Given the standard of review, the Court concludes that appellate counsel's failure to raise the alleged juror bias and misconduct on appeal in favor of stronger claims such as the issue of whether Perkins' case should have been severed from those of his codefendants, was objectively reasonable.  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  Accordingly, the Court finds that Perkins is not entitled to relief on his ineffective assistance of counsel claims related to the alleged juror bias and misconduct.

## F.  *Certificate of Appealability*

When the district court enters a final order resolving a petition under 28 U.S.C. § 2255 that is adverse to the petitioner, it must either issue or deny a certificate of appealability.  Rules

Governing Section 2255 Proceedings for the United States District Courts, Rule 11(a).  By statute, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing demands that Perkins demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For the reasons set forth above, the Court concludes that Perkins has failed to make that showing in this case, and, accordingly, no certificate of appealability shall issue from this Court.  To the extent Perkins intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22(b).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds no reason to set aside Perkins' conviction or sentence at this time.  Accordingly, Perkins' [788] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED.  To the extent Perkins intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

An appropriate Order accompanies this Memorandum Opinion.

***This is a final, appealable order.***

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE